```
                                          ┌─────────────────────────────────┐
                                          │ USDC SDNY                        │
                                          │ DOCUMENT                         │
UNITED STATES DISTRICT COURT              │ ELECTRONICALLY FILED             │
SOUTHERN DISTRICT OF NEW YORK             │ DOC #: _____           │
--------------------------------------X   │ DATE FILED: OCT 2 9 2013         │
                                  :       └─────────────────────────────────┘
STEPHEN CLARK,                    :
                                  :
             Petitioner,          :            11 Civ. 5814 (KBF)
                                  :            05 Cr. 210 (TPG)
        -v-                       :
                                  :            OPINION & ORDER
UNITED STATES OF AMERICA,         :
                                  :
             Respondent.          :
                                  :
--------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Stephen Clark, presently incarcerated in FCI Coleman Low, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (ECF No. 1.[1]) He was sentenced on June 15, 2007 by United States District Judge Thomas Griesa to 135 months' imprisonment, three years' supervised release, and a $200 special assessment. For the reasons set forth below, his petition is DENIED.

I.   BACKGROUND

On August 3, 2006, Clark was charged in a 20-count superseding indictment—one count of conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. § 1349; five counts of wire fraud in violation of 18 U.S.C. § 1343; eleven counts of money laundering in violation of 18 U.S.C. § 1956; and three counts of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (the "Indictment"). (Colson Decl. Ex. A, ECF No. 17.) The charges stemmed from a

---

[1] All ECF references in this Opinion & Order correspond to the docket in 11 Civ. 5814 (KBF).

telemarketing fraud scheme run by Clark and his co-defendants whereby salespeople who worked for the company they operated cold-called individuals and offered them "guaranteed" credit cards, for a fee of several hundred dollars, that they knew would ultimately not be provided. (Id. Ex. A ¶¶ 9-19.) The Government alleged that the company initiated electronic debit transfers from bank accounts in the United States totaling approximately $30 million from approximately 100,000 victims of the scheme. (Gov't Opp. GX1 ¶ 9, ECF No. 22.)

On September 1, 2006, Clark executed a written plea agreement in which he agreed to plead guilty to Count One (conspiracy to commit mail and wire fraud) and Count Nine (money laundering) of the Indictment (the "Plea Agreement"). The Plea Agreement was addressed to Robert Kalina, Clark's attorney. The Plea Agreement provided that, in exchange for Clark's guilty plea, the Government would to drop the remaining 18 counts against Clark and not to prosecute him further for this conduct. (Id. GX2 at 2.) The Plea Agreement provided for a "Stipulated Guidelines Range" of 135 to 168 months' imprisonment, with a total maximum sentence of 40 years. (Id. GX2 at 2, 4.) The offense level used to calculate the Stipulated Guidelines Range was reduced by three levels in light of Clark's acceptance of responsibility. (Id. GX2 at 4.) The parties agreed that a sentence within the Stipulated Guidelines Range "would constitute a reasonable sentence in light of all the factors set forth in Title 18, United States Code, Section 3553(a)," though the parties were permitted to seek a sentence outside of this range based on these factors. (Id. GX2 at 4-5.)

The Plea Agreement also contained the following waiver:

> It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above (135-168 months' imprisonment) and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range.

(Id. GX2 at 5.)  Finally, the Plea Agreement states that, "[n]o additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties."  (Id. GX2 at 7.)

Clark pleaded guilty on September 1, 2006.  During his plea allocution before Judge Griesa, he specifically acknowledged, among other things:

- That he was represented by counsel (Kalina) and was satisfied with his representation and advice (id. GX3 at 2:21-3:1);

- That he had signed the Plea Agreement (id. GX3 at 3:8-11);

- That, before signing the Plea Agreement, counsel reviewed it with him (id. GX3 at 3:14-16);

- That he understood the Plea Agreement (id. GX3 at 3:17-18);

- That no promises had been made to him "with regard to the sentence over and above what may be included in the plea agreement" (id. GX3 at 8:8-11);

- That he was not required to plead guilty and had the right to go to trial (id. GX3 at 8:12-16);

3

- That he understood the constitutional rights he was foregoing by not going to trial (id. GX3 at 8:17-9:22);

- That he had committed the crimes to which he was pleading guilty (id. GX3 at 9:23-12:10);

- That, as part of the Plea Agreement, he was waiving his right to appeal any sentence within or below a Guidelines range of 135 to 168 months' imprisonment (id. GX3 at 12:19-13:1)

As a result, Judge Griesa accepted Clark's plea as "voluntary and factually based." (Id. GX3 at 12:14-16.)

On June 15, 2007, Judge Griesa sentenced Clark. At the outset of the sentencing hearing, Judge Griesa stated that he would not grant a "vulnerable victim" enhancement to Clark's Guidelines range that had been requested by the Probation Department. (Id. GX4 at 2:22-23.) Kalina then stated "I would ask the Court to have a reduction for a two-level enhancement for a defendant knew or should have known [sic] that the victim of the offense was a vulnerable victim." (Id. GX4, Tr. at 3:21-24.) Judge Griesa repeated his statement that he had would not be granting the enhancement, the Government confirmed that it was not contained in the Plea Agreement, and Kalina apologized, stating, "I was – my brain was . . . ." (Id. GX4 at 4:14-5:4.)

Kalina next spoke about Clark's offense conduct, "largely reading from the Government's sentencing submission" (Clark Mem. at 5), until Judge Griesa stated, "I don't understand what point you are getting at." (Gov't Opp. GX4 at 5:6-9:10.)

4

Kalina responded that he was "trying to get to the point of what my client did in this situation vis-à-vis the other defendants," after which Judge Griesa reminded Kalina that he had already read the Government's submission. (Id. GX4 at 9:11-16.) Kalina then stated "[t]he government has made a decision that my client not allow him to do the things the government here wishes to do. I tried to. The government didn't want to do it. I can't tell them what to do. They are bigger and they know what they're doing in many, many ways in this situation, your Honor." (Id. GX4 at 10:3-7.) The court again informed Kalina that the purpose of his statements was unclear, to which Kalina replied "I am speaking of my client and what my client wants to talk to you about." (Id. GX4 at 10:12-15.)

Clark himself then addressed the court about his health issues, his separation from his family living in Canada, and his father's illness. (Id. GX4 at 10:18-13:14.) Clark acknowledged, "I will not be able to get visits from my family, as they live in Canada." (Id. GX4 at 11:15-16.) Clark also stated, "I wish that you can allow me to reduce my sentence from Level 32 to a lower level so that I could return to my country of Canada as soon as possible in order to see my parents and live with my wife and daughter." (Id. GX4 at 13:10-13.) Kalina then gave his final statement, addressing the impact of United States v. Booker on the Sentencing Guidelines, Clark's cooperation with United States and Canadian authorities, Clark's father's illness, and requests to serve at a facility in Florida and to self-surrender on a specific date. (Id. GX4 at 13:15-18:5.) Kalina stated that the offense level "is not [calculated by] going into a restaurant with where [sic] they have a

little bunch of balls going around and it comes out number 27 . . . this is a very serious situation for all the parties here." (Id. GX4 at 17:15-19.)

Judge Griesa ultimately agreed that the Stipulated Guidelines Range in the Plea Agreement was the appropriate Guidelines range, and sentenced Clark to 135 months' imprisonment (the low end of that range). (Id. GX4 at 26:19-22.) In sentencing Clark to 135 months, Judge Griesa noted, "Even though I'm following the [G]uidelines, I think I am obliged to recognize the factors under Section 3553, and what I am playing close attention to is the seriousness of the offense and the need for deterrence of further criminal conduct on the part of the defendant." (Id. GX4 at 27:10-14.) Judge Griesa also sentenced Clark to three years' supervised release and a $200 special assessment. (Id. GX4 at 26:23-27:2.) At the conclusion of the sentencing hearing, at the request of the Government and over the objection of Kalina, Clark was immediately remanded into the custody of the Bureau of Prisons. (Id. GX4 at 29:15-31:1.)

In connection with a prior criminal case in the United States in the late 1990s, Clark received a treaty transfer to Canada in order to serve a portion of his sentence in that case. (Clark Mem. at 4, ECF No. 21.) A "treaty transfer" refers to the International Prisoner Transfer Program, which permits "the transfer of prisoners from countries in which they had been convicted of crimes to their [participating] home countries." See U.S. Dep't of Justice, Criminal Division, Office of Enforcement Operations, Int'l Prisoner Transfer Program, http://www.justice.gov/criminal/oeo/iptu/ (last visited Oct. 29, 2013). Clark was also

6

represented by Kalina in that case.  Clark describes Kalina as "organized, prepared, well-spoken, and a forceful advocate with the government and in court" in that prior representation.  (Stephen Clark Aff. ¶ 5, ECF No. 18.)

Following his June 15, 2007 sentencing in this case, in August 2007, Clark alleges he informed his case manager at FCI Coleman Low that he wished to apply for a treaty transfer but that the case manager did not file the application for him until July 2008.  (Id. ¶ 13.)  Prior to filing the application, Clark's mother consulted another attorney, Joe Grob, as to Clark's potential treaty transfer.  In an electronic mail to Clark's mother dated August 22, 2007, Grob told her that a second treaty transfer was "extremely unlikely" to be granted.  (Toby Clark Aff. Ex. A at 2, ECF No. 19.)  Grob also directed Clark's mother to the Department of Justice ("DOJ") website for the International Prisoner Transfer Program and quoted language from the page stating multiple treaty transfers are "always denied."  (Id.)

Clark's request for a second treaty transfer was officially denied on October 6, 2008 on the grounds that "the prisoner was transferred previously and reentered the United States and also because of the seriousness of the offense."  (Stephen Clark Aff. Ex. A.)  Clark applied for reconsideration of his transfer request on August 6, 2009 on "humanitarian and compassionate grounds."  (Id. Ex. B at 1.)  In his reconsideration letter, Clark acknowledged that "[o]ne of the reasons for the denial of my previous application was that I was already the recipient of a prior treaty transfer" and that he has "now been denied a second treaty transfer based on this . . . ."  (Id. Ex. B at 2.)

7

Kalina was suspended from legal practice in New York in October 2010. (Colson Decl. Ex. E.)  In its opinion suspending Kalina from practice, the New York Appellate Division, First Department, stated that Kalina's medical records showed that he "exhibited symptoms of mild cognitive impairment in February 2008 which had since resulted in a diagnosis of Alzheimer's disease."  (Id. Ex. E at 1)  The doctor who examined Kalina in February and March 2008 states in a letter that Kalina had "noted slight difficulty with retrieval of names and dates" over the previous year, but that it had not affected his work as a lawyer in the courtroom. (Id. Ex. D at 1.)  The doctor found that, while Kalina's thought processes "as to speed, coherence, logic & goal direction," and his concentration and attention, were normal, his memory showed "some impairment" and his "calculations were poor." (Id. Ex. D at 2.)

Clark filed the instant petition on August 12, 2011, and the petition became fully briefed as of December 14, 2011.  The petition was transferred to the undersigned on June 6, 2013.

## II.   DISCUSSION

Clark petitions this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 because he alleges he received ineffective assistance of counsel from Kalina in connection with his decision to plead guilty and at sentencing.  Though the Court finds that the appellate waiver in the Plea Agreement and the Government's statute of limitations argument are both persuasive grounds for denying the instant petition, the Court also reaches and

analyzes the merits of Clark's ineffective assistance claim.  For the reasons set forth below, Clark's petition to vacate, set aside, or correct his sentence is denied.[2]

A.    Plea Agreement Waiver

A defendant's waiver of the right to challenge his or her sentence through an appeal or a collateral attack (including a petition under 28 U.S.C. § 2255) is presumptively enforceable.  See, e.g., United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010).  A petitioner may rebut the presumption of enforceability by showing that "the waiver was not made knowingly, voluntarily, and competently," that the sentence was "imposed based on constitutionally impermissible factors," that "the government breached the plea agreement," or that "the sentencing court failed to enunciate any rationale for the defendant's sentence."  United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000).  "[A] claim of ineffective assistance of counsel will survive a waiver if the claim relates to advice counsel gave with regard to entering the plea or the process by which the defendant agreed to plead guilty."  Bossous v. United States, No. 11 Civ. 5303, 2012 WL 4435312, at *3 (S.D.N.Y. Sept. 26, 2012) (citing Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008)).

Here, Clark's statements at his plea allocution, in combination with the Plea Agreement itself, provide ample basis for the Court to find that his waiver of the right to challenge his sentence of 135 months' imprisonment—which is "within or below" his Stipulated Guidelines Range of 135 to 168 months' imprisonment—under 28 U.S.C. § 2255 was knowing and voluntary.  See, e.g., Bradley v. United States,

---

[2] No evidentiary hearing is necessary in this action.  The combined submissions of the parties provide sufficient basis to deny the petition.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001).

9

No. 03 Civ. 9063, 2005 WL 2033382, at *3 (S.D.N.Y. Aug. 24, 2005) (citing United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001)).  Clark points to no evidence suggesting that the Court failed to enunciate any rationale for his sentence, that the Government breached the Plea Agreement, or that the sentence was imposed on the basis of constitutionally impermissible factors.  Nor, as discussed below, do Clark's claims of ineffective assistance of counsel require the Court to set aside the waiver.  Accordingly, Clark's waiver of his right to appeal or litigate under 28 U.S.C. § 2255 is enforceable.

      B.     <u>Statute of Limitations</u>

Under 28 U.S.C. § 2255(f), a one-year statute of limitations applies to motions brought under this section, which begins to run from, <u>inter alia</u>, "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).  Because Clark filed this petition on August 12, 2011, more than four years after his judgment of conviction was entered and nearly four years after Clark's mother learned from another attorney (who declined to take Clark's case) that a second treaty transfer was "extremely unlikely" because the DOJ website states they are "always denied," the Government argues that Clark's petition is untimely.  (Gov't Opp. at 9-13.) Clark argues that the limitations began to run in January 2011, which is when he alleges he learned "that second treaty transfers are never granted and that Mr. Kalina's carelessness and erratic behavior were likely related to early Alzheimer's disease."  (Clark Mem. at 14-15.)

Though the Court agrees with the Government that Clark failed to timely file the instant petition within the limitations period provided in 28 U.S.C. § 2255(f), it reaches the merits of Clark's ineffective assistance of counsel claim.

C.    Ineffective Assistance of Counsel

1.    Generally

A petition under 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel will be granted only if a petitioner is able to show that (1) his or her counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he or she was prejudiced by counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687-96 (1984).

As to the first prong of the Strickland test, attorney conduct is subject to an objective standard of reasonable effective assistance, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As to the second prong, because ineffective assistance may render the outcome of a proceeding unreliable, a defendant need only demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Still, more is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

In the context of a guilty plea, a petitioner must show that, had counsel rendered adequate professional assistance, he or she would not have pleaded guilty

11

and would, instead, have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This required showing is further complicated in cases (like this one) where a petitioner affirms in open court the quality of his or her interactions with counsel and to the voluntariness of his or her plea. Courts afford "a strong presumption of verity" to such statements. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

With respect to in-court performance, courts have found that, where an attorney completely fails to act on behalf of his or her client (for example, by sleeping during a proceeding), the attorney's "constructive disappearance" warrants a presumption of prejudice. See Tippins v. Walker, 77 F.3d 682, 687 (2d Cir. 1996) ("[T]he buried assumption in our Strickland cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse . . . an assumption we cannot make when counsel is unconscious at critical times."); see also Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001) (holding that when defense counsel sleeps through "not insubstantial portions" of trial, defendant's Sixth Amendment rights are violated and prejudice is presumed). The failure to act must be total to warrant this presumption—a "drunk or drugged" attorney's behavior is not presumed prejudicial, because "[e]ven the intoxicated attorney exercises judgment, though perhaps impaired, on behalf of his client at all times during a trial." Burdine, 262 F.3d at 349; see also Gonzalez v. United States, 722 F.3d 118, 136 (2d Cir. 2013) (both prongs of Strickland satisfied where "attorney did little more than simply attend Gonzalez's sentencing hearing").

2. <u>Dows v. Wood</u>

Though not controlling authority, the Ninth Circuit's decision in <u>Dows v. Wood</u>, 211 F.3d 480 (9th. Cir. 2000), is instructive.  In <u>Dows</u>, the court considered an ineffective assistance of counsel claim premised on Alzheimer's disease in the context of a petition under 22 U.S.C. § 2254.  In that case, Dows was represented by counsel, Robert Egger, at trial, and was convicted of first-degree rape in January 1992.  <u>Id.</u> at 483.  Approximately eighteen months later, in June 1993, two judges wrote the Washington state bar to call attention to Egger's "declining courtroom performance."  <u>Id.</u>  Egger was then diagnosed with Alzheimer's disease in early July 1993 by a doctor who stated, "in his opinion, Egger's ability to be an effective attorney would probably have been affected in January 1992 during Dows's trial." <u>Id.</u> at 483-84.  Dows's § 2254 petition was denied by the district court, and the denial was affirmed by the Ninth Circuit.  <u>Id.</u> at 482.

The <u>Dows</u> court noted that, due to the nature of Alzheimer's disease and the individual variations in symptoms from patient to patient, Egger's diagnosis with late stage Alzheimer's eighteen months after trial did not prove what effects, if any, the disease may have had on his performance during trial.  <u>Id.</u> at 485 ("The mere fact that counsel may have suffered from a mental illness at the time of trial, however, has never been recognized by the Supreme Court as grounds to automatically presume prejudice.")  The court then examined each of Dows's core arguments as to Egger's actual performance—that he failed to adequately prepare, that he prevented Dows from testifying, and that he failed to adequately "test" the

state's evidence at trial—and determined that Dows had failed to meet his burden of proving that Egger's performance was either deficient or resulted in prejudice.[3] Id. at 486-87. Though Dows pointed to numerous references in the record where Egger "may have made minor mistakes or appeared momentarily confused," the court found that these instances were taken out of context and were insufficient to show deficient performance or prejudice. Id. at 487.

### 3.    Application

Clark alleges ineffective assistance by Kalina in two ways: (a) Kalina promised Clark a treaty transfer to Canada, which was the basis for Clark's decision to plead guilty (Clark Mem. at 1); and (b) Kalina's performance at Clark's sentencing was "likely related to early-stage Alzheimer's disease" (id. at 1-2). Neither argument provides a basis to vacate, set aside, or correct Clark's sentence.

### a.    Clark's plea

Clark alleges that, but for "Kalina's incorrect legal advice regarding treaty transfers," he would not have pled guilty. (Clark Mem. at 19.) Clark does not allege that Kalina's advice on treaty transfers was caused by early-stage Alzheimer's disease, but rather that the advice was "objectively unreasonable." (Id. at 1.) Clark analogizes his case to Padilla v. Kentucky, in which the Supreme Court found that

---

[3] Courts also look at the attorney's actual performance in cases involving ineffective assistance of counsel claims due to other mental illnesses. See Smith v. Ylst, 826 F.2d 872, 874, 877 (9th Cir. 1987) (§ 2254 petition denied where defendant's attorney exhibited "paranoid psychotic" symptoms during period in which he represented defendant, because attorney's "actual conduct" at trial was not objectively unreasonable); Lopez v. Artus, No. 03 Civ. 7087 (RJH), 2005 WL 957341, at *3 (S.D.N.Y. Apr. 25, 2005) (§ 2254 petition denied where attorney was suspended from practice for "incapacitat[ion] by reason of mental infirmity or illness"; in-court performance matched prevailing professional norms and defendant failed to show prejudice due to overwhelming evidence against him).

an attorney's incorrect advice to his client that a plea would not result in deportation satisfied the first prong of <u>Strickland</u>, as that claim contradicted the "clear and explicit" terms of the relevant immigration statute. <u>See</u> <u>Padilla v. Kentucky</u>, 559 U.S. 356, 368 (2010).

Clark argues that the DOJ's one-treaty-transfer policy is as unambiguous as the statute discussed in <u>Padilla</u>. (Clark Mem. at 4.) In <u>Padilla</u>, the Court emphasized the impact of the potential for deportation on a defendant's decision to accept a plea agreement, noting "[w]e too have previously recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" 559 U.S. at 368 (<u>citing</u> <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 321 (2001)).

The Second Circuit, however, requires more than "a defendant's self-serving, post-conviction testimony" that his decision regarding a plea agreement would have been different but for his attorney's improper advice, interpreting its decision in <u>Boria v. Keane</u>, 99 F.3d 492 (2d Cir. 1996), as consistent with the Seventh Circuit's "objective evidence" rule. <u>United States v. Gordon</u>, 156 F.3d 376, 380-81 (2d Cir. 1998); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991). Under <u>Toro</u>, a defendant must provide more than after-the-fact conclusory assertions that he would have made a different decision regarding his plea; he must produce objective evidence that he was prejudiced by counsel's performance. <u>Toro</u>, 940 F.2d at 1068; <u>see also</u> <u>Nicholas v. Smith</u>, 329 F. App'x 313, 316 (2d Cir. 2009). This objective evidence can include the strength of the government's case against the defendant,

"[t]he likelihood that an affirmative defense [would have been] successful at trial," and "an assessment of the probable increase or reduction in sentence relative to the plea if the defendant [would have proceeded] to trial." Eisa v. Immigration and Customs Enforcement, No. 08 Civ. 6204 (FM), 2008 WL 4223618, at *9 (S.D.N.Y. Sept. 11, 2008) (internal citation omitted).

Even assuming the truth of Clark's allegation that Kalina's performance was deficient because he promised Clark a treaty transfer to Canada,[4] Clark is unable to show that he suffered prejudice under Strickland. To the contrary, as described above, the Plea Agreement conferred significant benefits on Clark—Clark avoided prosecution on 18 of the 20 counts with which he was charged, he secured a maximum sentence of 40 years, and he agreed to a Guidelines range of 135 to 168 months' imprisonment, which was the result of a three-level reduction in his offense level for acceptance of responsibility and which Clark agreed was reasonable under 18 U.S.C. § 3553(a). (See Gov't Opp. GX2 at 1-6.) At his plea, Clark expressed satisfaction with Kalina's representation, and acknowledged that he had signed the Plea Agreement, reviewed it with Kalina, and understood it. (See id. GX3 at 2:21-3:18.) Clark also affirmed his understanding that he was not required to plead guilty, that he was giving up certain constitutional rights by pleading guilty, and that he had committed the crimes to which he was pleading. (See id. GX3 at 8:12-12:10.)

---

[4] The Court notes that there is significant evidence, discussed infra, which calls into question whether such a promise was ever made.

Clark's alleges, through conclusory after-the-fact assertions, that he believed at the time that he had a "viable defense at trial." (Clark Mem. at 1, 3, 13.) Clark does not, however, state what that defense was or provide any evidence of such a belief beyond his own statements years later. This is not the kind of "objective evidence" required by the case law. In fact, Clark's own statements at his plea and sentencing tell a different story. See Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013) ("[T]he court must also take into account admissions made by the defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'") (citing Blackledge, 431 U.S. at 74). Clark affirmed at his plea before Judge Griesa that no promises were made to him beyond what was contained in the plea agreement. (Gov't Opp. GX3 at 8:8-11). At his sentencing, Clark twice indicates his awareness of the fact that he will not be able to visit certain family members while serving his sentence because they were in Canada. (Id. GX4 at 11:15-16, 13:10-13.) At no time during Clark's plea or sentencing did either Clark (who spoke at length) or Kalina mention a treaty transfer to Canada. Clark's after-the-fact conclusory allegations, when weighed against the Plea Agreement and Clark's own statements at the time, are thus insufficient to show that he suffered prejudice from Kalina's allegedly deficient performance during plea negotiations.

b.  Clark's sentencing

Clark alleges that Kalina's representation at his sentencing was also ineffective because Kalina "spoke incoherently about the Guidelines calculation" and "failed to articulate the particular factors under 18 U.S.C. § 3553" that might have resulted in Clark receiving a lower sentence.  (Clark Mem. at 1-2.)  Clark alleges that Kalina's performance was "likely related to early-stage Alzheimer's disease" and that Kalina "was experiencing symptoms of cognitive decline."  (Id. at 1-2, 20.)

Though Kalina's behavior at sentencing, see Section I, supra, does suggest some degree of confusion, the Court finds that it does not fall within the limited presumptions of constructive or actual disappearance recognized by courts in Strickland cases because Kalina actively, if imperfectly, represented Clark during the proceedings.[5]  See Gonzalez, 722 F.3d at 136; Tippins, 77 F.3d at 687; see also Burdine, 262 F.3d at 341, 349.  Further, again assuming that Kalina's representation of Clark at sentencing was deficient, Clark has failed to meet his burden of showing prejudice—a reasonable probability that Kalina's performance impacted the outcome of the sentencing hearing.  Though Judge Griesa's questions on the record point to a lack of clarity in Kalina's presentation, each issue cited by

---

[5] The Court notes that the medical evidence in the record, which suggests Kalina was suffering from a mild form of cognitive impairment in early 2008 (see Colson Decl. Ex. D), is insufficient to show what Kalina's medical state may have been at Clark's June 2007 sentencing.  See Dows, 211 F.3d at 484-85 ("[B]ecause of the nature of Alzheimer's disease and its varied manifestations in different individuals, neither Dows nor anyone else can prove what effects, if any, the disease had on Egger's memory and cognitive ability at the time he represented Dows at trial [eighteen months prior to Egger's diagnosis].")

Clark was ultimately resolved through further explanation and colloquy.[6] Cf. Dows, 211 F.3d at 486-87.  Clark also took the opportunity to supplement Kalina's presentation at sentencing, discussing his health and family issues at length with Judge Griesa.  (Gov't Opp. GX4 at 10:18-13:14.)  Clark ultimately received 135 months' imprisonment, which was at the low end of the Stipulated Guidelines Range in the Plea Agreement and which Judge Griesa indicated was also the product of analyzing the factors under 18 U.S.C. § 3553(a).  (Id. GX4 at 27:10-14.) Simply put, there is no objective evidence in the record which tends to show that Clark was prejudiced by Kalina's allegedly deficient performance at sentencing beyond Clark's after-the-fact assertions.  Clark thus fails to meet his burden under Strickland of showing that he is entitled to relief under 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel.

---

[6] In addition to Kalina's in-court performance, Clark cites several out-of-court examples to demonstrate that Kalina may have had Alzheimer's at the time of Clark's sentencing.  (See Clark Mem. at 7.)  These examples are not relevant to the central issue—Kalina's representation of Clark—because courts evaluate the actual conduct of the attorney in handling the case for its objective reasonableness.  Cf. Pilchak v. Camper, 741 F. Supp. 782, 792-93 (W.D. Mo. 1990) (ineffective assistance of counsel found on § 2254 petition because defendant was prejudiced by attorney's failure to conduct any pre-trial discovery whatsoever, but defendant not prejudiced by attorney's confused and forgetful behavior at trial), affirmed, 935 F.2d 145 (8th Cir. 1991).

III.   CONCLUSION

For the reasons set forth above, Clark's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).  The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith.  See Feliz v. United States, No. 01 Civ. 5544 (JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

The Clerk of the Court is directed to close the motion at ECF No. 16 and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            October **29** , 2013

                                    KATHERINE B. FORREST
                                    United States District Judge